THOMAS HART brought his suit in chancery in fhe Bourbon district court, on the 27th day of March 1801, against Coburn and Currens.
His bill charged the following facts : That he purchased from the commonwealth of Virginia sundry land warrants to the amount of 4000 acres, and in the year :-- put them into the hands of his brother, Nathaniel Hart, to locate.
Before they were located Nathaniel Hart was killed by the Indians. The warrants came to the hands of Lawrence Thompson, who, without any authority from Thomas Hart, fraudulently assigned them to himself.
Thompson made entries on these warrants in his own name — :particularly of warrant No. 6119, for 500 acres, he entered to lie on Stoner, On the 6th day of December 1786, he caused a survey to be made thereon, and shortly after assigned the plat and certificate to Cobum and N. Massie. In September 1788 Coburn purchased put Massie’s inteasst in the plat and certificate, and Massie assigned it accordingly.
*38 During this year the complainant, a resident of Maryland, came to Kentucky to inquire into his land claims and discovering the situation of the land secured by said warrant No. 6119; gave Coburn notice of his right to it: and informed him he would prosecute his claim thereto.
Coburn however proceeded to perfect his legal title and on the 19th day of October 1789, procured a patent for the land by virtue of said warrant.
Some years afterwards he sold and conveyed part of the land to Currens, who, before he got the conveyance, had notice of the claim of the complainant.
The bill lastly charged that Thompson so located the remainder of the complainant’s warrants that the whole, or the greater part thereof, would be lost.
The prayer was for a conveyance of the land, or its value, from Coburn, and general relief.
Currens, by his answer, insisted that he was a fair purchaser for a valuable consideration, without any notice of the complainant’s claim, except the following ; “ Sometime before he obtained the said deed, perhaps two or three years, a man who was riding along, called to him in his meadow, and told him Thomas Hart had a claim to the said land ; and he has since understood that the man was Samuel Price, a son-in-law to the complainant. But this defendant says that the said Price did not tell him of what nature the said claim was, or whether founded on" the same or any other entry ; and this defendant says he received no other notice but this, but from the complainant himself, which he thinks was after the deed was executed.”
Coburn, in his answer, stated he was a fair purchaser for a valuable consideration. That he had no notice of the complainant’s claim, nor of the fraud charged, until after he had paid the purchase money and received an assignment to himself of the plat and certificate of survey, and had taken possession of the land. He admitted notice of the complainant’s claim, after the assignment, and before the patent issued to himself. He did. not admit the fraud and forgery charged, but called on the complainant for proof of it.
He alleged that Nathaniel Hart had authority to sell, or dispose of said warrants.
*39 That his executrix did put them into the hands of said Thompson, who passed his receipt for them, and located them on the usual terms, and perhaps retained some as his proportion.
That the complainant, knowing of the death of his brother, N. Hart, acquiesced in Thompson’s acts for 6 or 8 years ; and after he gave the defendant notice of his claim to the land in question, permitted it to remain without prosecution for 13 years longer ; which long delay the defendant insisted was an abandonment of his right.
The answer called on the complainant to answer sundry interrogatories therein stated, relative to his putting the warrants into the hands of Nathaniel Hart, and the complainant’s knowledge of, and acquiescence in Thompson’s conduct, &c.
The complainant, in answer to the interrogatories, stated that the warrants were put into the hands of N. Hart to locate, but that he was not authorised to dispose of them in any other manner.
He admitted that he was informed that the widow and executrix of his brother, N. Hart, did (but without his privity or consent) put the warrants into the hands of said, Thompson ; but on what terms, or whether any were stipulated, he was not informed.
He admitted that Thompson did locate land for him by virtue of the warrants aforesaid, a part of which was then held by Robert Craddock, to whom the complainant sold it; but denied that he held any of it himself, unless it were by virtue of locations which he had not discovered.
He admitted that he shortly (how long he could not say) before 1788, heard of Thompson’s having got possession of his warrants, and came out to this country that year in consequence of that information. He did not get complete information until he came out.
When he came out, he found that a considerable part of the land located by Thompson, by virtue of said warrants, had been sold by him to Robert Craddock ; and that Hoy and M’Millin also claimed an interest in them. Upon which he agreed with them to submit the dispute to the honorable Hany Inhis, Benjamin Sebastian and Christopher Greenup. They made up an award, which he annexed to his answer ; and which he observed in- *40 eluded the land in dispute. But that a great part of thé’ lands located by virtue of said warrants were not to be found at all — Thompson not being able to shew it.
The award bore date the 11th of September 1788* and purported to be made on a submission by Crad-dock, M’Millin and Hoy of one part, and Hart of the other, it decided that the assignments endorsed on the warrants were forged. That Thompson, and those' claiming under him, should convey to Hart two-thirds of whatever lands should be obtained by virtue of entries on the warrants : it specified each wammt particularly, amounting in the whole to 4000 acres ; and reserved to Thompson, and those claiming under him, óne-third of the lands, as a full reeompence for locating the same.
By an agreement underneath the award, subscribed by Robert Craddock for Lawrence Thompson, and the complainant, they agreed to stand to the award*
Copies of the warrant and other title papers of the land in dispute-were filed. The depositions of three witnesses were taken. They swore they were well acquainted with the complainant’s hand writing ; and that the signature to the assignment on the warrant, was not his hand writing.
This was all the evidence in the cause.
The suit having by consent been removed to the general court, that court, at their May term 1804-, decreed that the defendants, on the complainant paying to them the expenses of clearing out of the several offices the land in controversy, should convey to the complainant, by deed with special warranty, the 500 acres of land in the bill mentioned, according to the boundaries of the patent. And commissioners were appointed to adjust the expenses of clearing out the land.
By consent an appeal was taken from this decree, without security; and the following assignment of errors filed:
1st. The inferior court ought to have decreed the complainant’s bill to be dismissed.
2nd. If the complainant was entitled to recover the land, the defendants were entitled to compensation, not only for clearing out the claim from the offices, but to a* compensation for locating and surveying, which ought to have been decreed to them.
*41 3rd. The inferior court ought either to have directed a j ury to be summoned to ascertain what the compensation ought to have been, and whether in land or money; or appointed commissioners to ascertain and make report of it.
The cause was argued in this court at the last term, and at this term the decree of the general court was affirmed;